The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner William C. Bost (and briefs and oral arguments before the Full Commission). The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of the average weekly wage.
******************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. That on March 30, 1994, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. That on said date, an employer-employee relationship existed between the Employee-Plaintiff and the Employer-Defendant.
3. That on said date, the Employer-Defendant employed three (3) or more employees.
4. That on said date, the carrier of the workers' compensation insurance for the Employer-Defendant was Aetna Casualty Surety Company.
5. In addition, the parties stipulated into evidence as authentic business records the following:
(a) Medical records of Dr. Jerry Watson;
(b) Medical records of Dr. John Hayes;
(c) Medical records of Dr. Stephen Naso;
 (d) All personnel and wage data submitted by employer in discovery;
(e) Prescription and bills for medication.
******************
The Full Commission adopts the findings of fact of Deputy Commissioner Bost as follows:
FINDINGS OF FACT
1. The Employee-Plaintiff is a thirty-seven-year-old female who completed the eighth grade. Her date of birth is July 1, 1959.
2. The Employee-Plaintiff had been employed with the Employer-Defendant for approximately two and one-half months prior to March 30, 1994. The Plaintiff was employed as an Inspector.
3. The Employee-Plaintiff worked five days a week at eight hour shifts. Employee-Plaintiff's average weekly wage was $147.70, yielding a compensation rate of $98.47.
4. As an inspector, the Employee-Plaintiff's job duties included picking up bundles of hosiery, typically slips or hosiery leggings, untying the bundles, inspecting each individual garment for defects, retying the bundles, and, upon completion, repeating these same steps on the next bundle of hosiery.
5. On March 30th, 1994, the Plaintiff was given some unusually large bundles of slips to inspect (size 52). The Plaintiff had never inspected this size before. Supervisory personnel called by the Defendants testified that it was unusual for them to even make size 52, and that they did not know how much a bundle of such slips weighed as they had only weighed bundles in the smaller sizes. Each bundle contained anywhere from 48-120 garments. When the Plaintiff attempted to jerk a large bundle (approximately 30 lbs.) up to open it for inspection, she felt a sudden "real bad pain" on the inner portion of her arm, and the pain ran up into her elbow and down into her hand. On March 30, 1994, the Employee-Plaintiff was inspecting a large bundle of hosiery which was heavier than those to which she was accustomed. When she went to lift the bundle, she felt immediate, severe pain in her right arm. The Employee-Plaintiff immediately reported her pain to her supervisor.
6. On March 30, 1994, Plaintiff sought treatment from her primary care physician, Dr. Smith, an OB/GYN physician. Dr. Smith diagnosed the Employee-Plaintiff with a muscle strain and referred her to Dr. Jerry Watson
7. Dr. Jerry Watson, a general surgeon, provided treatment for the Employee-Plaintiff from April 1, 1994 through September 9, 1994. Dr. Watson diagnosed the Plaintiff with mild carpal tunnel syndrome to the right hand and tendinitis to the right elbow. According to Dr. Watson, the Employee-Plaintiff's carpal tunnel syndrome had resolved by June 17, 1994.
8. The Employee-Plaintiff was also examined by Dr. Stephen J. Naso, Jr., an orthopedic surgeon specializing in cumulative trauma disorders. On August 16, 1994, Dr. Naso diagnosed the Employee-Plaintiff with tendinitis to the right hand.
9. The Plaintiff had no prior record of injury or problems with or to her right elbow, arm or wrist. She had never filed a workers' compensation claim before. The Plaintiff has an eighth grade education and no GED. She has no special training or skills, having worked as a baby-sitter prior to working for the Defendant-Employer.
10. Although Dr. John Hayes and Dr. Stephen Naso examined Plaintiff, each doctor saw the Plaintiff on only one occasion. Further, Dr. Naso's evaluation was based upon limited data since he did not have all of Dr. Watson's history and treatment records or other test data at the time. Dr. Naso concurred with Dr. Hayes in finding a "lateral epicondylitis". Dr. Naso admitted that he had not been aware of the Plaintiff's lifting or jerking incident, and that she could have had carpal tunnel which merely resolved prior to her visit with him in mid-August, 1994, 4 1/2 months after the injury. The opinion of Dr. Watson is deserving of the greater weight.
11. The lifting/jerking injury of March 30th, 1994 aggravated and/or precipitated tendonitis in Plaintiff's elbow which had already manifested itself as a result of her repetitive motion job. Plaintiff sustained a 25% PPD to the arm as a result of her injuries.
12. After her injuries on March 30, 1994, the Plaintiff attempted to return to work with the Defendant on more than one occasion, the last being July, 1994. On July 15, 1994, Dr. Watson released her to return to full time non-repetitive motion work. Plaintiff then applied for benefits from the Employment Security Commission and drew $52.00 per week until October 31st, 1994. Plaintiff was required to look for work each week in order to draw these benefits. She testified to the places were she had applied. On October 31, 1994, the Plaintiff found part time work baby-sitting for $50.00 per week. She found work at Melody Square in January, 1995, doing light duty work 16 hours per week as a cashier, grossing $80.00 per week. This is the best job which Plaintiff has been able to secure within her medical restrictions.
******************
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of her compensable injury on March 30, 1994, Plaintiff is entitled to temporary total disability compensation at the rate of $98.47 per week from April 1, 1994 until October 30, 1994. N.C.G.S. § 97-29.
2. As a result of the compensable injury, the Plaintiff was temporarily and partially disabled from October 31, 1994. N.C.G.S. § 97-30.
3. Plaintiff is entitled to receive compensation from October 31, 1994 pending further order of the Commission or until she has been compensated for up to 300 weeks from the date of her injury at a rate of two-thirds of the difference between Plaintiff's average weekly wage and the actual wages paid. N.C.G.S. § 97-30.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury on March 30, 1994. N.C.G.S. § 95-25.
******************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. For her temporary total disability compensation, Defendants shall pay all temporary total disability compensation to Plaintiff at the rate of $98.47 per week, from April 1, 1994 to October 30, 1994. Said amount shall be paid to Plaintiff in a lump sum, subject to an attorney's fee approved in Paragraph 4.
2. The Defendants shall pay temporary partial disability compensation to the Plaintiff from October 31, 1994 until Plaintiff has been compensated for up to 300 weeks from the date of the injury or until further order of the Commission at the rate of two-thirds of the difference between Plaintiff's average weekly wage and the actual wages paid, subject to an attorney's fee herein approved. Every fourth check shall be sent to Plaintiff's attorney.
3. Defendants shall pay all medical expenses incurred by Plaintiff as a result of her compensable injury on March 30, 1994, when bills for the same have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
4. A reasonable attorney's fee of twenty-five percent of the compensation due Plaintiff under Paragraphs 1 and 2 of the Award is approved for Plaintiff's counsel and shall be paid as follows; Twenty-five percent of the lump sum due Plaintiff shall be deducted from that sum and paid directly to Plaintiff's counsel.
5. Defendants shall pay the costs due this Commission.
 S/ ______________________ WANDA BLANCHE TAYLOR DEPUTY COMMISSIONER
CONCURRING:
S/ ______________________ DIANNE C. SELLERS COMMISSIONER
S/ ______________________ PHILLIP A. HOLMES DEPUTY COMMISSIONER
WBT/cbd